IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| BRANDIE BELFORD, )<br>)<br>   Plaintiff, )<br>)<br>   v. )<br>)<br>MEMORIAL MEDICAL CENTER, an )<br>Illinois not-for-profit corporation, )<br>)<br>   Defendant. ) | No. 2:20-CV-03188 |

### OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Defendant's Motion to Dismiss. (d/e 7). Because Plaintiff's Complaint does not allege a real and immediate threat of future violations of her rights, Defendant's Motion is GRANTED.

### I.   LEGAL STANDARD

Defendant has filed its motion pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under that rule challenges the sufficiency of the complaint. Christensen v. Cnty. of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff need only provide a short and plain statement of

the claim showing he is entitled to relief and giving the defendants fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion under Rule 12(b)(6), the Court accepts all well-pleaded allegations as true while construing all reasonable inferences in the plaintiff's favor. Id. Thus, the complaint is construed in the light most favorable to the plaintiff. Id. But the complaint must still set forth facts that plausibly demonstrate a claim for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendants are liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action. Id. Using this standard, the allegations in the Complaint are considered below.

## II.  FACTS ALLEGED IN THE COMPLAINT

Plaintiff Brandie Belford is deaf and, therefore, a person with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12181–89 ("ADA"), the Rehabilitation Act, 29 U.S.C. §

794, et seq., and the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 ("ACA"). She communicates primarily by using American Sign Language ("ASL"). Defendant Memorial Medical Center ("Memorial") is one of seven affiliates of Memorial Health System, and is a Springfield, Illinois area medical center operated as a not-for-profit. Passavant Area Hospital ("Passavant") is another affiliate of Memorial Health System located in Jacksonville, Illinois. Memorial is a public accommodation within the meaning of the ADA, is a recipient of federal funds under the Rehabilitation Act, and is a covered entity under the ACA. Compl. (d/e 1) ¶¶ 3, 4, 6–8.

On November 9, 2018, Plaintiff was taken by ambulance to the emergency room of Memorial at the direction of her primary care doctor, who called ahead to Memorial to advise that Plaintiff would require an ASL interpreter. However, there was no on-site interpreter available when Plaintiff arrived at 1:30 p.m. Instead, Memorial staff used a video remote interpreting ("VRI") equipment to communicate. The emergency room nurses used the VRI equipment to triage Plaintiff and continued to use the equipment

while treating Plaintiff. Plaintiff then underwent a series of tests and medical exams for treatment. Id. at ¶¶ 9–13.

At approximately 4:45 p.m. the same day, Plaintiff's husband arrived and used a text app on his phone to request an on-site interpreter, as he is also deaf. At around 5:30 p.m., an on-site interpreter arrived and remained with Plaintiff and her husband until Plaintiff was discharged at approximately 8:00 p.m. Id. at ¶ 14.

On October 22, 2019, Plaintiff took her 18-year-old son to Memorial for a gallbladder evaluation. When they arrived at approximately 10:30 a.m., Plaintiff requested an on-site interpreter for herself from the nurse as well as the VRI equipment while Plaintiff and her son waited for an interpreter. An on-site interpreter never arrived, and the VRI equipment did not arrive until approximately 1:47 p.m. While Plaintiff's son is neither deaf nor an ASL interpreter, he was able to communicate with the nurse for himself as well as intermittently for Plaintiff. Aside from communicating through her son, Plaintiff also used written notes to communicate with Memorial staff. Plaintiff's son was eventually discharged at around 2:15 p.m. Id. at ¶¶ 17–20.

Following each visit to the hospital, Plaintiff complained to Memorial's patient experience liaison and the nurse manager in charge of emergency medical services about the lack of an on-site interpreter and her inability to communicate effectively without one. The liaison responded to the complaint after the November 2018, visit stating that Memorial's emergency department leadership found the care provided to be appropriate. Following the October 2019 visit, the liaison apologized for not addressing Plaintiff's request during her visit and credited $250 towards her son's medical bill. Id. at ¶¶ 16 & 23.

Plaintiff lastly alleges that she may need to return to Memorial for other healthcare needs in the future. Id. at ¶ 24.

### III.  ANALYSIS

Plaintiff alleges that the above-stated facts amount to three counts of violations of federal law: one count of violating the Americans with Disabilities Act, 42 U.S.C. § 12181–89, one count of violating the Rehabilitation Act, 29 U.S.C. § 794, et seq., and one count of violating of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116. See generally Compl. (d/e 1). Defendant, in

turn, moves to dismiss each count on the ground that Plaintiff lacks Article III standing to sue, so the Complaint fails to state a claim.

Article III of the Constitution states that "[t]he Judicial Power shall extend to all Cases . . . [and] Controversies." Standing to sue is an essential component of the case-or-controversy requirement. Scherr v. Marriott Int'l, 703 F.3d 1069, 1074 (7th Cir. 2013) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). To have standing, a party must allege "(1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability." Id. at 1074. While the alleged injury need not be certain to occur to be "actual and imminent," it must be more than theoretical. MainStreet Org. of Realtors v. Calumet City, Ill., 505 F.3d 742, 744–45 (7th Cir. 2007).

Furthermore, when the relief sought is prospective injunctive relief, as it is here, "a party must allege a 'real and immediate' threat of future violations of their rights." Scherr, 703 F.3d at 1074 (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)). Specific to claims of ADA violations, "a plaintiff must allege 'past injury under the ADA'; show that 'it is reasonable to infer from her

complaint that this discriminatory treatment will continue'; and show that 'it is also reasonable to infer, based on the past frequency of her visits and the proximity of [the public accommodation] to her home, that she intends to return to [the public accommodation] in the future.'" Id. (citing Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008)). This standard is the same for establishing violations under the ADA, the ACA, and the Rehabilitation Act. See Jaros v. Illinois Dep't of Corr., 684 F.3d 667, 671–72 (7th Cir. 2012); see also Rodriguez v. City of New York, 197 F.3d 611, 618 (2nd Cir. 1999).

Defendant argues that Plaintiff has failed to show a "real and imminent threat of future rights violations" because Plaintiff has been discharged from Memorial and neither she nor her son will require follow-up care at Memorial's facilities. Defs. Mem. in Support of Mot. to Dismiss (d/e 8) at p. 3 (citing Scherr, 703 F.3d at 1073). This, Defendant argues, shows that Plaintiff's complaint does not allege an "actual and imminent" injury and leaves Plaintiff's complaint lacking.

In response, Plaintiff argues that the complaint sufficiently alleges a past harm which has deterred her from revisiting

Memorial, something she would do were it not for the alleged lack of reasonable accommodations. According to Plaintiff, such deterrence amounts to an injury in fact sufficient to grant her standing to seek injunctive relief. Additionally, Plaintiff states that, while she primarily utilizes Passavant Area Hospital for medical needs, that hospital does not have the same kinds of specialists as Memorial, making it more likely that she would be referred to Memorial in the future. In support of that contention, Plaintiff cites two, and only two, previous visits to Memorial which occurred in the two months prior to the November 2019 visit at issue here.

      Plaintiff's claims do not rise to the level required to have standing. While Plaintiff has alleged a plausible past claim under the ADA, her complaint does not show an intent to return to Memorial in the future. The allegations instead show that Plaintiff and her son have been discharged from Memorial with no follow-up appointments and that some physicians at Passavant might refer Plaintiff to Memorial at some time in the future for specialist services. Such claims are theoretical and do not raise a reasonable inference that Plaintiff intends to return to Memorial in the future. See Scherr, 703 F.3d at 1074–75 (holding that the plaintiff had

standing to sue a specific Marriott hotel location for alleged violations of the ADA because she stated she would use that specific location in the future, but did not have standing to sue other Marriott locations because she did not "assert an intent to return to [those] particular place[s].")  Moreover, Plaintiff admits that, "[a]s a resident of Jacksonville, Illinois, [she] primarily utilizes Passavant Area Hospital and physicians associated with the hospital for her medical needs," and does not state future plans to visit Memorial.  Compl. at ¶ 24.  As a result, Plaintiff has not shown a "real and immediate threat of future rights violations."  <u>Scherr</u>, 703 F.3d at 1073.  Thus, Plaintiff's Complaint does not raise claims sufficient for Article III standing.

### IV.  CONCLUSION

Therefore, Defendant's Motion to Dismiss (d/e 7) is GRANTED, and Plaintiff's Complaint (d/e 1) is DISMISSED without prejudice. While the Court dismisses Plaintiff's Complaint, Plaintiff is given 21 days from the date of this Order to file an Amended Complaint addressing the deficiencies identified above.  If Plaintiff fails to do so the Court may dismiss this case with prejudice for failure to prosecute.

**ENTERED:  September 29, 2021**

**FOR THE COURT:**          <u>/s/ Sue E. Myerscough</u>
                            **SUE E. MYERSCOUGH**
                            **UNITED STATES DISTRICT JUDGE**